GREENBERG TRAURIG, LLP
J. RICK TACHÉ (SBN 195100)
    (tacher@gtlaw.com)
SUSAN L. HELLER (SBN 160539)
    (hellers@gtlaw.com)
SHAUN A. HOTING (SBN 260656)
    (hotings@gtlaw.com)
ERIKSON C. SQUIER (SBN 275274)
    (squiere@gtlaw.com)
3161 Michelson Drive, Suite 1000
Irvine, California  92612
Telephone:  (949) 732-6500
Facsimile:   (949) 732-6501

Attorneys for Plaintiff
TOO FACED COSMETICS, INC.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOO FACED COSMETICS, INC., a California corporation,, | CASE NO. |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| CHRISLIE FORMULATIONS, LLC, a California limited liability company and BBEAUTIFUL, LLC, a California limited liability company, | **DATE:  February 1, 2016** **TIME:** **LOCATION:** |
| Defendant. | |

**TO DEFENDANT AND ITS COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on February 1, 2016, at _____ or as soon thereafter as the matter may be heard, in Courtroom ___ of this Court, located at _____, Plaintiff Too Faced Cosmetics, Inc. ("Plaintiff" or "Too Faced") will and hereby does move this Court for entry of a preliminary injunction against Defendants Chrislie Formulations, LLC and BBeautiful, LLC (collectively, "Defendants"), pending final resolution of this action.

Too Faced moves for a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, on the ground that Defendants' use of packaging that infringes the distinctive Little Black Book of Bronzers and Cat Eyes trade dresses to market their own competing cosmetics products is likely to cause consumer confusion. Irreparable injury will result to Too Faced unless Defendants' conduct is enjoined pending trial of this action. This motion is based on this Notice of Motion and Motion, the Declarations of Jeremy Johnson and Somer Tejwani in support thereof, all the pleadings, records, and papers on file in this action, and upon such further oral and documentary evidence as may be presented at the hearing of this motion.

DATED: January 8, 2016                    GREENBERG TRAURIG, LLP


                                          By */s/ Shaun A. Hoting* _____
                                             J. Rick Taché (CA Bar No. 195100)
                                             Susan S. Heller (CA Bar No. 160539)
                                             Shaun A. Hoting (CA Bar No. 260656)
                                             Erikson C. Squier (CA Bar No. 275274)

                                             Attorneys for Plaintiff,
                                             Too Faced Cosmetics, LLC

1

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF CONTENTS**

I.   INTRODUCTION..................................................................................................1

II.  STATEMENT OF FACTS ....................................................................................3

    A.   HISTORY OF TOO FACED AND THE LITTLE BLACK BOOK OF
         BRONZERS AND CAT EYES TRADE DRESSES.....................................3

         1.   The Book of Bronzers.....................................................................3
         2.   The Cat Eyes Eye Shadow Palette.................................................4

    B.   DEFENDANTS INTENTIONALLY AND KNOWINGLY
         INFRINGED THE BOOK OF BRONZERS AND CAT EYES
         TRADE DRESSES. ....................................................................................5

         1.   The Book of Bronzers.....................................................................5
         2.   The Cat Eyes Eye Shadow Palette.................................................6

III. STANDARD FOR GRANTING A PRELIMINARY INJUNCTION.......................7

IV.  ARGUMENT .......................................................................................................7

    A.   TOO FACED IS LIKELY TO SUCCEED ON THE MERITS OF ITS
         CLAIMS. .....................................................................................................7

         1.   The Book of Bronzers and Cat Eyes Trade Dresses Are Valid
            and Protectable....................................................................7
         2.   Defendants' Use of The Book of Bronzers and Cat Eyes Trade
            Dresses Is Likely to Cause Confusion. ...............................13

    B.   TOO FACED WILL SUFFER IRREPARABLE HARM WITHOUT
         IMMEDIATE RELIEF. .............................................................................20
    C.   THE BALANCE OF EQUITIES WEIGHS DECIDEDLY IN TOO
         FACED'S FAVOR....................................................................................21
    D.   RESTRAINING DEFENDANTS SERVES THE PUBLIC
         INTEREST. ...............................................................................................22

V.   CONCLUSION ...................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abbott Lab. v. Unlimited Bevs., Inc.*,
   No. 93-8576-CIV-KING, 1993 WL 729626 (S.D. Fla. Nov. 5, 1993) ................. 17, 18

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ........................................................ 14, 18

*Cal. Scents v. Surco Prods.*,
   28 F. App'x 659 (9th Cir. 2002) ........................................................ 13

*Century 21 Real Estate Corp. v. Sandlin*,
   846 F.2d 1175 (9th Cir. 1988) ........................................................ 14, 22

*Clamp Mfg. Co. v. Enco Mfg. Co.*,
   870 F.2d 512 (9th Cir. 1989) ........................................................ 12

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ........................................... 7, 8, 12, 14

*Clinique Labs v. Dep Corp.*,
   945 F. Supp. 547 (S.D.N.Y. 1996) ........................................................ 15, 19

*Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*,
   109 F.3d 275 (6th Cir. 1997) ........................................................ 15

*In re Dassler*,
   134 U.S.P.Q. 265 (T.T.A.B. 1962) ........................................................ 11

*Dreamwerks Prod. Group v. SKG Studio*,
   142 F.3d 1127 (9th Cir. 1998) ........................................................ 18

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
   741 F. Supp. 2d 1165 (C.D. Cal. Sept. 30, 2010) ........................................ 11

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987) .................................... 7, 9, 10, 13, 15, 20

*Fun-Damental Too v. Gemmy Indus. Corp.*,
   111 F.3d 993 (2d Cir. 1997) ........................................................ 15

*Golden Door, Inc. v. Odisho*,
   646 F.2d 347 (9th Cir. 1980) ........................................................ 13

*GoTo.com Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ........................................................ 13, 19

*GSC Logistics, Inc. v. Star Galaxy Logistics, Inc.*,
  C 09-5886 SBA, 2010 WL 3730709 (N.D. Cal. Feb. 24, 2010) ................................20

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
  150 F.3d 1042 (9th Cir. 1998) ................................................11

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  632 F.2d 817 (9th Cir. 1980) ................................................15

*M. Kramer Mfg. Co. v. Andrews*,
  783 F.2d 421 (4th Cir. 1986) ................................................15

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ............................................7, 20

*Official Airline Guides v. Goss*,
  6 F.3d 1385 (9th Cir. 1993) ................................................14

*Palantir Techs. Inc. v. Palantir.net, Inc.*,
  No C 07-03863 CRB, 2008 WL 152339 (N.D. Cal. Jan. 15, 2008)............................20

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
  782 F.2d 1508 (9th Cir. 1986) ................................................13

*Perfumebay.com, Inc. v. E-bay Inc.*,
  506 F.3d 1165 (9th Cir. 2007) ................................................19

*Russell v. Caesar*,
  No. C 01-2478 MJJ, 2001 WL 1835165 (N.D. Cal. Dec. 20, 2001) ............................18

*Sicilia Di R. Biebow & Co. v. Cox*,
  732 F.2d 417 (5th Cir. 1984) ................................................19

*Sunburst Prods., Inc. v. Derrick Law Co., Ltd.*,
  Nos. 89-56025, 90-55194, 1119 U.S. App. LEXIS 352 (9th Cir. Jan. 9,
  1991) ................................................19, 21

*Thane Int'l v. Trek Bicycle Corp.*,
  305 F.3d 894 (9th Cir. 2002) ................................................22

*Transgo Inc. v. Ajac Transmission Parts Corp.*,
  768 F.2d 1001 (9th Cir. 1985) ................................................12

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992)................................................7, 9, 10, 11, 14

*Vertos Med., Inc. v. Globus Med., Inc.*,
  No. C 09-1141 (PJF), 2009 WL 3740709 (N.D. Cal. Nov. 6, 2009) .........14, 20, 21, 22

*Vision Sports, Inc. v. Melville Corp.*,
  888 F.2d 609 (9th Cir. 1989) ................................................10, 12

iii

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
    529 U.S. 205 (2000)............................................................................7, 10, 11

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)...........................................................................................7

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This case involves two distinctive trade dresses that Too Faced uses in connection with its lines of cosmetics products, and Defendants Chrislie Formulations, LLC and BBeautiful, LLC's (collectively, "Defendants") creation of competing cosmetics products that are so strikingly similar that it could not have happened by chance.  Specifically, Defendants' "Bronze Book" copied the packaging trade dresses for Too Faced's "The Little Black Book of Bronzers" and Defendants' "Foxy Feline" eye shadow copied the trade dress for Too Faced's "Cat Eyes" eye shadow product. Indeed, Defendants have copied Too Faced's packaging so closely that consumers cannot help but confuse the products, as demonstrated by the images below:

 

 

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES











Defendants' slavish copying of the numerous distinctive elements in Too Faced's Little Black Book of Bronzers and Cat Eye products demonstrate intentional copying of the distinctive Too Faced trade dresses.  The clear intent is to pass off Defendants' products as Too Faced's to unsuspecting consumers.  Defendants' adoption of its infringing trade dresses has left Too Faced with no choice but to file this action to protect its trade dresses – some of its most valuable assets – and to seek a preliminary injunction.

2

## II.   STATEMENT OF FACTS

### A.   HISTORY OF TOO FACED AND THE LITTLE BLACK BOOK OF BRONZERS AND CAT EYES TRADE DRESSES.

Too Faced is a world-renowned cosmetics manufacturer that markets its popular, prestige cosmetics line to specialty retailers, both in the United States and worldwide. (Decl. of Jeremy Johnson ¶ 2.)  Too Faced is fiercely protective of the superior quality and luxury, as well as innovation, that its brand has come to represent, sourcing only the finest ingredients for its makeup and closely monitoring the manufacturing and packaging of its products.  (*Id.* ¶ 3.)  Each product represents a strong marriage of creative genius and skilled production.  (*Id.* ¶ 4.)  To preserve the goodwill in its brand, Too Faced strives to employ distribution channels befitting of a prestige line, selling its products solely in popular, specialty retail brick-and-mortar and online stores.  (*Id.* ¶ 5.)

Included in Too Faced's prestige line are its popular makeup palettes that allow consumers to create a distinctive look, including The Little Black Book of Bronzers ("The Book of Bronzers") and the Cat Eyes eye shadow palette.  (Decl. of Somer Tejwani ¶ 2.)  Too Faced originally created these products on or about March 2015 and June 2014, respectively, and The Book of Bronzers and Cat Eyes became instant successes, currently having sold over 68,000 units and 111,000 units, respectively.  (*Id.* ¶ 3.)

### 1.   The Book of Bronzers.

The success of The Book of Bronzers is due in part to Too Faced's unique and recognizable development of its brand with a fun, young, provocative, and sexy image. (*Id.* ¶ 4.)  The name itself, "The Little Black Book of Bronzers," stands out in the marketplace as a unique and eye-catching form for selling cosmetics.  The Book of Bronzer's distinctiveness is compounded by the book-like form for the packaging.  (*Id.* ¶ 5.)  The corresponding artwork and creative titles corresponding to the specific cosmetic bronzers contained within are consistent with this image, suggesting flirty themes that associate The Book of Bronzers with a woman's private or personal notebook that would

contain a variety of options for the woman to choose among for a given day or occasion. (*Id.*)  The strong and distinctive look of The Book of Bronzers was original and characteristic of Too Faced's brand image.  (*Id.* ¶ 5.)  No other cosmetic manufacturers have created or sold bronzers in a book format.  (*Id.* ¶ 5.)

Further, other cosmetic manufacturers have not sold bronzers in a book format using the unique font, color schemes, two-dimensional ("2D") artwork, packaging, number of bronzers, titles of bronzers, placement and configuration of bronzers and other design elements, or product description as originally created by Too Faced and used in The Book of Bronzers.  (*Id.* ¶ 6.)  The goodwill generated by Too Faced's creative and innovative marketing, including the trade dress in The Book of Bronzers, is valuable in the market as it makes Too Faced's products instantly recognizable and desirable to consumers.  (*Id.* ¶ 7.)  The value of Too Faced's The Book of Bronzers is dependent, in part, upon the fixed number of authorized high-quality products in distribution.  (*Id.* ¶ 8.)

### 2.    The Cat Eyes Eye Shadow Palette.

Too Faced also includes in its prestige cosmetic line a second palette, Cat Eyes. Like The Book of Bronzers, upon its creation and introduction to the market on or about June 2014, Cat Eyes also became a wild success, having sold over 111,189 units.  (*Id.* ¶ 9.)  This success was again due in part to the unique and recognizable development by Too Faced of its brand as fun, young, and sexy.  (*Id.* ¶ 10.)  The name, "Cat Eyes," in addition to the form of the product as using an eye-catching tin container for its packaging that stands out in the marketplace, in addition to the corresponding artwork contained within the tin container, is consistent with this image, suggesting flirty themes that conflate Cat Eyes with the theme of an exotic, ferocious, and provocative female. (*Id.* ¶ 10.)  The strong and distinctive look of Cat Eyes was original and characteristic of Too Faced's brand image.  (*Id.* ¶ 10.)  No other cosmetic manufacturers have created or sold eye palette cosmetics in a tin case format.  (*Id.* ¶ 10.)

Further, other cosmetic manufacturers have not sold eye palette cosmetics in a tin case format using the unique font, color schemes, 2D artwork, packaging, number of

4

cosmetic wells, titles of cosmetic wells, placement and configuration of cosmetic wells and other design elements, or product description as originally created by Too Faced and used in Cat Eyes, i.e., having a nine cosmetic well layout with three large wells and six small wells.  (*Id.* ¶ 11.)  The goodwill generated by Too Faced's creative and innovative marketing, including the trade dress in Cat Eyes, is valuable in the market and is instantly recognizable and desirable to consumers.  (*Id.* ¶ 12.)  As with The Book of Bronzers, the value of Too Faced's Cat Eyes is dependent, in part, upon the fixed number of authorized high quality products in distribution.  (*Id.* ¶ 13.)

### B.   DEFENDANTS INTENTIONALLY AND KNOWINGLY INFRINGED THE BOOK OF BRONZERS AND CAT EYES TRADE DRESSES.

#### 1.   The Book of Bronzers.

Defendants compete with Too Faced by offering the same types of cosmetic products to Too Faced's current and potential customers.  Defendants market a knock-off of Too Faced's The Book of Bronzers, which Defendants call "The Bronze Book."  (*Id.* ¶ 14.) The Bronze Book contains the same distinctive, trade dress elements and features that were originally created by Too Faced for The Book of Bronzers, including, for example, a nearly identical book format and title, a nearly identical font, color scheme, 2D artwork, and packaging.  (*Id.* ¶ 15.)  Additionally, The Bronze Book copies the number of bronzers, placement and configuration of bronzers and other design elements, and uses similar themes for the titles of bronzers and the overall product description.  (*Id.* ¶ 16.)

The strong and distinctive trade dress originally created and copied without authorization by Defendants creates confusion in customer and consumer minds as to Too Faced's association with the Bronze Book.  (*Id.* ¶ 17.)  Both The Book of Bronzers and the Bronze Book are cosmetic goods, and both The Book of Bronzers and the Bronze Book have a suggested price, without discounts due to sales or coupons, of $44.99 -

$49.00[1].  (*Id.* ¶ 18.)  Defendants are thus directly advertising and selling cosmetics in the same market and to the same consumers as Too Faced.  (*Id.* ¶ 19.)  The natural, probable, and foreseeable result of the above conduct by Defendants has been to deprive Too Faced of revenue, to damage Too Faced's goodwill, and to impose substantial expenses on Too Faced to counteract the Defendants' conduct.

### 2.     The Cat Eyes Eye Shadow Palette.

Too Faced is informed and believes that Defendants have also knowingly and willfully copied Cat Eyes, without obtaining authorization or license from Too Faced, in order to create, develop, market, and distribute unauthorized and infringing low quality products branded as "Foxy Feline."  (*Id.* ¶ 20.)  Foxy Feline contains the same trade dress features that were originally created by Too Faced for its Cat Eyes product, including, but not limited to, the same or confusingly similar font, packaging format, number and layout of cosmetic wells, color schemes, 2D artwork, and other design elements, as evidenced by the total look and feel of Foxy Feline when compared with Cat Eyes.  (*Id.* ¶ 21.)

The strong and distinctive trade dress originally created and copied without authorization by Defendants creates confusion in customer and consumer minds as to Too Faced's association with Foxy Feline.  (*Id.* ¶ 22.)  Both Cat Eyes and Foxy Feline relate to cosmetic goods, more specifically to the eye shadow palette subset of cosmetic goods, and both Cat Eyes and Foxy Feline have a suggested price, without discounts due to sales or coupons, of roughly $36.00[2].  (*Id.* ¶ 23.)  Defendants are thus directly advertising and selling cosmetics in the same market and to the same consumers as Too Faced.  (*Id.* ¶ 24.)  The natural, probable, and foreseeable result of the above conduct by Defendants has been to deprive Too Faced of revenue, to damage Too Faced's goodwill, and to impose substantial expenses on Too Faced to counteract the Defendants' conduct.

---

[1] Sephora.com lists The Book of Bronzers at $49.00, while Chrislie.com lists the Bronze Book at $44.99

[2] Sephora.com lists Cat Eyes at $36.00, while Chrislie.com lists Foxy Feline at $35.99.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

III.   **STANDARD FOR GRANTING A PRELIMINARY INJUNCTION**

"A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). Because Too Faced satisfies this test, it is entitled to a preliminary injunction prohibiting Defendants' use of their infringing trade dresses.

IV.   **ARGUMENT**

   A.   **TOO FACED IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.**

   To succeed on a trade dress infringement claim under Section 43 of the Lanham Act, the plaintiff must prove that there is a likelihood of confusion with a protectable trade dress. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000). Trade dress is protectable if it is non-functional and either inherently distinctive or has acquired secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773 (1992). The facts here establish that Defendants have infringed Too Faced's valid and protectable rights in The Book of Bronzers and Cat Eyes trade dresses.

      1.   **The Book of Bronzers and Cat Eyes Trade Dresses Are Valid and Protectable.**

         a.   **The Book of Bronzers and Cat Eyes Trade Dresses.**

   Too Faced's The Book of Bronzers and Cat Eyes products contain protectable trade dress. "Trade dress" refers to the total image of a product and may include features such as size, shape, color, color combinations, texture, graphics, or sales techniques." *Two Pesos*, 505 U.S. at 765; *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987). In evaluating a trade dress claim, courts focus on "the overall visual impression that the combination and arrangement of [the individual] elements create." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001). "Trade

7

dress is the composite tapestry of visual effects." *Id.*

Here, The Book of Bronzers trade dress comprises a combination of several elements, including:  (1) a book format; (2) a selection of eight separate bronzers arranged in a circular pattern; (3) each bronzer surrounded by an orange circle; (4) bronzer color and shade names relating to chocolate; (5) a sectioned interior panel describing each shade with accompanying illustrations; and (6) a central logo featuring red script text above gold block text and surrounded by a gold border.

The Book of Bronzers trade dress is shown below:






NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

The Cat Eyes trade dress comprises several elements, including:  (1) a rectangular tin case; (2) a cheetah fur pattern on the front and back of the case; (3) a central logo feature pink text above gold block text surrounded by a gold border; (4) a selection of nine wells arranged with three large wells next to six smaller wells; (5) a rectangular mirror above the selection of nine wells; and (6) a cat-related product name referencing the "cat eye" effect that can be achieved by using the eye shadows and liners.

The Cat Eyes trade dress is shown below:





### b.    The Book of Bronzers and Cat Eyes Trade Dresses Are Not Functional.

Too Faced's The Book of Bronzers and Cat Eyes trade dresses are not functional and are entitled to protection.  *Two Pesos*, 505 U.S. at 769 ("[E]ligibility for protection under § 43(a) depends on nonfunctionality.").  In determining functionality, a product's trade dress must be analyzed as a whole, and not by its individual elements. *Fuddruckers*, 826 F.2d at 842 ("[F]unctional elements that are separately unprotectible

9

can be protected together as part of a trade dress.").  A trade dress is functional "if it is essential to the product's use or if it affects the cost and quality of the article."  *Id.*  On the other hand, the combination and placement of colors or designs is usually not functional and is protectible.  *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 614 (9th Cir. 1989) (affirming district court's conclusion that plaintiff's use of repeated color scheme was nonfunctional and protectable).

The Book of Bronzers and Cat Eyes trade dresses are not functional because (1) the trade dresses as a whole do not contribute to the cosmetics products' use, function, purpose, or operation; (2) a plethora of alternative packaging designs and color schemes are available to competitors and have been used by competitors for years; and (3) the custom-designed packaging and artistic designs do not permit the cosmetics products to be manufactured at a lower cost.  In fact, it would probably be more economical for Too Faced to sell its cosmetics products without The Book of Bronzers or Cat Eyes trade dresses – as Defendants and others have done for department store cosmetics sales for years.

Because all factors weigh against a finding of functionality, Too Faced's packaging trade dresses are non-functional.  *See Two Pesos*, 505 U.S. at 767 n.6 (holding decorations and other features to evoke Mexican theme in restaurant were not functional).

### c. The Book of Bronzers and Cat Eyes Trade Dresses Are Inherently Distinctive and Have Acquired Secondary Meaning.

To prevail on a motion for preliminary injunction, Too Faced need only show that its trade dresses are *either* inherently distinctive *or* have secondary meaning.  *Two Pesos*, 505 U.S. at 769; *Wal-Mart Stores*, 529 U.S. at 210.  Too Faced's The Book of Bronzers and Cat Eyes trade dresses satisfy both of these standards.

#### (i) The Book of Bronzers and Cat Eyes Trade Dresses Are Inherently Distinctive.

Product packaging, such as The Book of Bronzers and Cat Eyes trade dresses, "normally *is* taken by the consumer to indicate origin," *i.e.*, to be inherently distinctive.

10

*Wal-Mart Stores*, 529 U.S. at 215 (emphasis in original).  Thus, it normally can be protected without a showing of secondary meaning.  *Two Pesos*, 505 U.S. at 776 ("[P]roof of secondary meaning is not required to prevail on a claim under § 43(a) of the Lanham Act where the trade dress at issue is inherently distinctive.").  The threshold for establsihing distinctiveness for product trade dress is so low that minor artistic variations may be sufficient to render the trade dress distinctive.  *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042 (9th Cir. 1998) (holding that while there was nothing distinctive about depiction of grape leaf on bottle of wine, particular rendering of grape leaf may stil be inherently distinctive).

     In this instance, The Book of Bronzers and Cat Eyes packaging trade dresses are inherently distinctive because they serve to identify Too Faced as the source of the products.  *Wal-Mart Stores*, 529 U.S. at 210 ("A mark is inherently distinctive if its intrinsic nature serves to identify a particular source."); *see In re Dassler*, 134 U.S.P.Q. 265, 266 (T.T.A.B. 1962) (three colored bands on ADIDAS athletic shoe served only to identify applicant's goods and distinguish them from the goods of others.).  The artistic design and layout of The Book of Bronzers and Cat Eyes draw consumers' eyes to the products and sets them apart from those of competitors.  Most importantly, no other bronzer or eye shadow palette manufacturer uses Too Faced's unique combination of elements for its product packaging.  Specifically, no other bronzer manufacturer produces a bronzer product in a book format, with a circular palette arrangement, with a similar book-related name.  Similarly, no eye shadow palette manufacturer produces a product with the same nine-well layout, a tin case, and a cat-related name.  As such, The Book of Bronzers and Cat Eyes trade dresses are inherently distinctive and protactable without a showing of secondary meaning.  *See Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1776 (C.D. Cal. Sept. 30, 2010) (finding water bottle inherently distinctive where evidence indicated there were "no other brands that combine the elements of the square bottle, three-dimensional labeling effect, and tropical motif").

(ii)   The Book of Bronzers and Cat Eyes Trade Dresses Have Acquired Secondary Meaning.

First, Too Faced has continuously and exclusively used The Book of Bronzers and Cat Eyes trade dresses since March 2015 and June 2014, respectively.  (Tejwani Decl., ¶ 25.)  Until Defendants began selling their infringing products, no one else used packaging similar to Too Faced's for bronzer or eye shadow packaging.  (*Id.* ¶ 25.)  Second, The Book of Bronzers and Cat Eyes products have been featured in numerous advertisements and other promotional materials for Too Faced products, including third-party catalogs from retailers offering Too Faced products, such as Sephora.  (*Id.* ¶ 26.)  Third, The Book of Bronzers and Cat Eyes trade dresses have been featured on the www.toofaced.com website.  (*Id.* ¶ 27.)

This long-standing and continuous use of the trade dresses is sufficient to establish secondary mearning, particularly when the trade dresses have been displayed in numerous advertisements.  *See Vision Sports*, 888 F.2d at 615 ("The factors to be assessed in determining secondary mearning include:  whether actual purchasers associate [plaintiff's] trade dress with [plaintiff's] products, the degree and manner of [plaintiff's] use of the trade dress, and whether [plaintiff's] use of the trade dress has been exclusive."); *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989) (affirming district court determination of secondary mearning where product design was extensively featured in advertisments).

Defendants' intentional copying is also relevant to the determination of whether secondary meaning exists; the Ninth Circuit has noted that in analyzing secondary meaning; "'[o]ur cases recognize that evidence of deliberate copying is relevant.'" *Clicks*, 251 F.3d at 1264 (quoting *Transgo Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015-16 (9th Cir. 1985)).  Here, Defendants' slavish copying of the design elements distinct to the Too Faced proudcts indicates those products have obtained secondary meaning in the marketplace.

In sum, there can be no question that Too Faced has protectable trade dresses in its product packaging and that it is not only inherently distinctive, it also has secondary

12

1  meaning.

2  **2.     Defendants' Use of The Book of Bronzers and Cat Eyes Trade Dresses Is Likely to Cause Confusion.**

3  The "central element of trademark infringement" is likelihood of confusion.

4  *GoTo.com Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000).  The test the

5  Ninth Circuit has articulated for trade dress infringement "is whether there is a likelihood

6  of confusion resulting from the total effect of the defendant's package on the eye an

7  dmind of an ordinary purchaser." *Fuddruckers*, 826 F.2d at 841 (citation omitted); *Cal.*

8  *Scents v. Surco Prods.*, 28 F. App'x 659, 663 (9th Cir. 2002) (citation omitted)

9  ("Likelihood of confusion is considered by examining the 'total effect of the defendant's

10  product and package on the eye and mind of an ordinary purchaser.'").  "Likelihood of

11  confusion exists when customers viewing the mark would proabably assume that the

12  product or service it represents *is associated with the source* of a different product or

13  service identified by a similar mark." *Fuddruckers*, 826 F.2d at 845 (emphasis in

14  original) (citations omitted).  The "likelihood of *any* mistaken consumer belief that the

15  two operations had the same source constitutes infringement."  *Id.* at 845 (reversing jury

16  verdict in trade dress case on instructional error for limiting confusion to belief that

17  infringer was owned and franchised by plaintiff, instead of instructing jury that confusion

18  exists if consumers believe that there is *any* association between the parties).

19  The Ninth Circuit has identified the following elements to be considered in

20  determining whether confusion is likely in trade dress cases:  (i) evidence of actual

21  confusion; (ii) the defendant's intent in adopting the trade dress; (iii) the similarity of the

22  trade dress; (iv) the similarity of the goods; (v) the similarity of the marketing channels,

23  and (vi) the strength of the trade dress.  *Fuddruckers*, 826 F.2d at 845 (citing *Park 'N*

24  *Fly, Inc. v. Dollar Park and Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986)).  These

25  factors are not weighed evenly; evidence of actual confusion is persuasive proof that

26  future confusion is likely, and a showing of an intent to copy is "'entitled to *great weight*

27  because a defendant is presumed able to accomplish this purpose.'" *Fuddruckers*, 826

28  F.2d at 846 (emphasis added) (quoting *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 351

13

(9th Cir. 1980)); *Clicks*, 251 F.3d at 1266 (district court erred in failing to accord "great weight" to evidence of an intent to copy plaintiff's trade dress). Each of these factors weighs in favor of a likelihood of confusion in this case.

### a.   The Book of Bronzers and Cat EyesTrade Dresses Are Distinctive and Strong.

First, as discussed above, Too Faced's trade dresses are inherently distinctive. Inherently distinctive trade dresses are considered strong and protectable without a showing of secondary meaning. *Two Pesos*, 505 U.S. at 776. Moreover, The Book of Bronzers and Cat Eyes trade dresses have been strengthened "by extensive advertising, length of time in business, public recognition, and uniqueness." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) (affirming permanent injunction). Accordingly, The Book of Bronzers and Cat Eyes trade dresses are entitled to a broad scope of protection.

### b.   Defendants Knowingly and Intentionally Infringed The Book of Bronzers and Cat EyesTrade Dresses.

Although intent is not required for a finding of likelihood of confusion, *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999), when, as here, "an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Vertos Med., Inc. v. Globus Med., Inc.*, No. C 09-1141 (PJF), 2009 WL 3740709, at *9 (N.D. Cal. Nov. 6, 2009) (citing *Official Airline Guides v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993)).

There is strong evidence that Defendants knowingly developed competing bronzer and eye shadow products offered in infringing packaging, intending to trade on the distinctive The Book of Bronzers and Cat Eyes trade dresses. Here, Defendants copied nearly all of The Book of Bronzers' trade dress elements. Defendants copied the book format, the sectioned interior panel with accompanying illustrations, the title, the selection of eight bronzers arranged in a circular pattern, the use of an orange circle surrounding each bronzer, the bronzer color and shade names relating to chocolate, and

14

the central logo with red script text above golden block text surrounded by a gold border.

For the Cat Eyes trade dress, Defendants copied the rectangular tin case, the cheetah fur pattern on the front and back of the case, the central logo featuring pink text above gold block text surrounded by a gold border, the selection of nine wells arranged with three large wells next to six smaller wells, the rectangular mirror above the selection of nine wells, and the cat-related product name referencing the "cat eye" effect that can be achieved by using the eye shadows and liners.

When the results are as strikingly similar as they are in this case, it is clear that Defendants' new trade dresses were created with an intent to trade off Too Faced's goodwill. *See Clinique Labs v. Dep Corp.*, 945 F. Supp. 547, 555 (S.D.N.Y. 1996) ("The overall appearance of the two lines of products is too similar to even entertain the idea that Dep did not mimic Clinique's mark and dress."). Thus, this factor also supports a likelihood of confusion. In fact, "courts almost unanimously *presume* a likelihood of confusion based on a showing of intentional copying." *Fuddruckers*, 826 F.2d at 845-56 (emphasis added) (citing *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 448 n.24 (4th Cir. 1986)).

### c. Defendants' Promotion and Packaging of Its New "Bronze Book" and "Foxy Feline" Products Are Extremely Similar to The Book of Bronzers and Cat Eyes Trade Dresses.

In evaluating similarity, "it is axiomatic in trademark law that 'side-by-side' comparison is not the test .... Instead, the court must determine, in light of what occurs in the marketplace, whether the mark 'will be confusing to the public when singly presented.'" *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980) (internal citations omitted). This is necessary to "account for the possibility that sufficiently similar marks 'may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark." *Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997) (citation omitted); *Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993, 1005 (2d Cir. 1997) (affirming preliminary injunction in trade dress

15

case where "[t]he overwhelming similarities of the trade dress of the two coin banks – which are not sold side-by-side on a shelf – create the same general impression to the consumer's eye").

In this case, there is no question that The Book of Bronzers and Cat Eyes trade dresses and Defendants' infringing packaging "create the same general impression to the consumer's eye," as illustrated below:







NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES











As shown in the photographs above, the resemblance can only be described as "uncanny." *See Abbott Lab. v. Unlimited Bevs., Inc.*, No. 93-8576-CIV-KING, 1993 WL 729626, at *1 (S.D. Fla. Nov. 5, 1993) (finding likelihood of confusion in trade dress case where defendant's new label had an "uncanny resemblance to" plaintiff's label (in layout, colors, type style, size, shape and placement) and to shape of bottle for competing

17

1 beverage).  Defendants' infringing packaging, like the defendant's trade dress in *Abbott*

2 *Lab*, is clearly designed "mimic[] plaintiff's."  *Id.*

3       There can be no question that there is a strong similarity between The Book of

4 Bronzers and Cat Eyes trade dresses and the trade dresses used by Defendants for their

5 competing products.  This factor also weighs in favor of a likelihood of confusion.

6       **d.**    **The Products Are Competing.**

7       Where nearly identical trade dress is used on or in connection with competing

8 products, "likelihood of confusion would follow as a matter of course."  *Brookfield*, 174

9 F.3d at 1056 ("Related goods are generally more likely than unrelated goods to confuse

10 the public as to the producers of the goods."); *Russell v. Caesar*, No. C 01-2478 MJJ,

11 2001 WL 1835165, at *4 (N.D. Cal. Dec. 20, 2001) ("The greater the similarity between

12 the goods offered by the plaintiff and the defendant, the more likelihood there is of

13 consumer confusion.").

14       Here, although the products are priced differently, the parties sell competing

15 cosmetics products that are used for the same purpose.  (Tejwani Decl. ¶ 28.)

16 Accordingly, this factor weighs heavily in Too Faced's favor.  *See Dreamwerks Prod.*

17 *Group v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998) ("The clincher is the

18 relatedness of the goods.").  This factor also weighs in favor of a likelihood of confusion.

19       **e.**    **The Parties' Marketing Channels and Customers Overlap.**

20       The Book of Bronzers and Cat Eyes products are sold both online and in cosmetics

21 specialty stores such as Sephora and Ulta.  (Tejwani Decl. ¶ 29.)  Women who shop at

22 these websites and stores are likely to shop elsewhere online and at department stores that

23 feature Defendants' "Bronze Book" and "Foxy Feline,"" products, such as Marshall's.

24 (*Id.* at ¶ 29.)  Thus, the distribution channels for The Book of Bronzers and Cat Eyes

25 products and Defendants' Bronze Book and Foxy Feline products overlap, and so do the

26 consumers.

27       The fact that the products are not currently available in the same store is not a

28 mitigating factor where the "products are direct at generally the same group of

18

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF
POINTS AND AUTHORITIES

consumers." *Sunburst Prods., Inc. v. Derrick Law Co., Ltd.*, Nos. 89-56025, 90-55194, 1119 U.S. App. LEXIS 352, at *18 (9th Cir. Jan. 9, 1991) (watches sold in specialty sports shops versus mass merchandisers were found to have overlapping consumers).  In fact, the likelihood of confusion can be *greater* when the parties use different marketing channels.  *See id.* ("The inability of consumers to compare the products side by side and observe the precise differences in appearance may increase the likelihood of confusion.") (quoting *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 433 (5th Cir. 1984)); *Clinique Labs.*, 945 F. Supp. at 556 ("[E]ven sophisticated buyers are not always careful buyers, and their very awareness of status brand names and designs may make them more vulnerable to confusion.").

## f.    Evidence of Actual Confusion Is Not Required to Demonstrate a Likelihood of Confusion.

Because of the difficulty in garnering evidence of actual confusion, courts find the absense of actual confusion "generally unnoteworthy."  *Perfumebay.com, Inc. v. E-bay Inc.*, 506 F.3d 1165, 1175-76 (9th Cir. 2007) ("[T]he failure to *prove* instances of actual confusion is *not* dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy.") (emphasis in original); *GoTo.com*, 202 F.3d at 1207-08 (absence of actual confusion would "by no means refute a likelihood of confusion").  Because discovery has not commenced in this nascent action, Too Faced has not yet adduced substantial evidence of actual confusion. [3]

Thus, all of the likelihood of confusion factors weigh in favor of Too Faced with the possible exception of this final factor, which should be treated as neutral.  Accordingly, Too Faced has established that it is likely to succeed on the merits.

---

[3] Too Faced discovered evidence suggesting at least one instance of actual confusion.  In response to a post on social media website Instagram.com, containing a picture of Defendant's "Bronze Book," one consumer replied, "Whoa! I totally thought that was the real thing for a second!"  The original poster then replied, "I did too when I first saw it!" (Tejwani Decl., Ex. A.)

### B.   TOO FACED WILL SUFFER IRREPARABLE HARM WITHOUT IMMEDIATE RELIEF.

Where a trademark plaintiff has demonstrated that it is likely to succeed on the merits of its claim, as here, irreparable harm is presumed.  *See Marlyn Nutraceuticals*, 571 F.3d at 877 (recognizing the "presumption of irreparable injury" in trademark infringement suits); *see also Vertos Med.*, 2009 WL 3740709, at *11-12 (applying presumption of irreparable harm in granting injunctive relief).  Moreover, it is well-settled that "the potential loss of good will or the loss of the ability to control one's reputation may constitute irreparable harm."  *GSC Logistics, Inc. v. Star Galaxy Logistics, Inc.*, C 09-5886 SBA, 2010 WL 3730709, at *10 (N.D. Cal. Feb. 24, 2010). Because of the inherent difficulty in quantifying damage to reputation or goodwill, such losses constitute irreparable harm.  *Id.*

In this case, because Too Faced's reputation is closely tied to the high quality of its cosmetics products, Defendants' use of infringing trade dresses for lines of competing products that may not have the same level of quality as The Book of Bronzers and Cat Eyes products will cause actual and significant harm to Too Faced's brand and goodwill. *See Fuddruckers*, 826 F.2d at 845 (noting potential for harm exists "if consumers believe that [defendant] runs [plaintiff], and they are disappointed with the quality of [defendant's] good or service, they may be deterred from patronizing [plaintiff]"), *Palantir Techs. Inc. v. Palantir.net, Inc.*, No C 07-03863 CRB, 2008 WL 152339, at *8 (N.D. Cal. Jan. 15, 2008) (reputation of plaintiff would be irreparably harmed in absence of injunctive relief).  If Defendants are permitted to continue using their infringing trade dresses, consumers will no longer be able to count on The Book of Bronzers and Cat Eyes as signifying some of the highest quality cosmetics products on the market.  This will harm the Too Faced brand.

In addition, Too Faced's reputation is at risk because people may view the Bronze Book and Foxy Feline products as less expensive versions of The Book of Bronzers and Cat Eyes products, albeit slightly.  (Tejwani Decl. ¶ 31.)  As a result, some of Too Faced's customers may be tempted by the lower-cost Bronze Book and Foxy Feline

20

products, try them, and not return to the Bronzer Book and Cat Eyes brands.  This will hurt Too Faced's overall sales.  (*Id.* ¶ 32.)  Furthermore, other Too Faced customers may view the availability of look-alike products in department stores as diminishing the perception of The Book of Bronzers and Cat Eyes products as exclusive and "prestigious."  As a result, these customers may decide to discontinue using The Book of Bronzers and Cat Eyes products.  (*Id.* ¶ 33.)

In sum, Too Faced will suffer irreparable harm if Defendants are permitted to continue infringing The Book of Bronzers and Cat Eyes trade dresses in connection with competing products.

## C.  THE BALANCE OF EQUITIES WEIGHS DECIDEDLY IN TOO FACED'S FAVOR.

The irreparable harm that Too Faced is suffering and will continue to suffer in the absence of the entry of immediate injunctive relief far outweighs any potential harm to Defendants, who, with full knowledge of The Book of Bronzers and Cat Eyes trade dresses, adopted the confusingly and strikingly similar packaging design for its Bronze Book and Foxy Feline products.  As described above, if an injunction does not issue, the hardship to Too Faced, a business that relies heavily on its reputation for premium cosmetics products, will be significant.  *See Vertos Med.*, 2009 WL 3730709, at *12 (balance of equities weighed in plaintiff's favor where it showed likelihood of success on the merits of its trademark infringement claim and it would continue to suffer injury to its business and goodwill in the absence of injunctive relief).

In contrast, an injunction will impose little hardship on Defendants.  Defendants will be able to continue to promote and sell competing products – they will simply need to use alternative packaging.  To the extent that this packaging change harms the marketing of its products, the harm would be self-inflicted and is not a basis to deny an injunction.  "When a party adopts a 'course which it must have realized would create consumer confusion,' that party cannot later 'complain that having to mend its ways will be too expensive.'"  *Sunburst Prods.*, 1991 U.S. App. LEXIS 352, at *18 (affirming

21

preliminary injunction finding that balance of hardships tipped in plaintiff's favor because defendant copied plaintiff's trade dress) (internal cites omitted); *Century 21*, 846 F.2d at 1182 ("A newcomer who has the 'entire material universe' or, stated in other terms 'a whole dictionary full of words, an encyclopedia full of proper names, or a world atlas full of place names,' from which it could have chosen its name and mark, has a duty to avoid the use of a mark similar to an established one.").  Because it clearly knew of the existence and reputation of The Book of Bronzers and Cat Eyes trade dresses, any injury that Defendants might suffer would be a result of their informed and deliberate choice.

Because the balance of equities tips strongly in favor of Too Faced, grant of a preliminary injunction is warranted here.

### D.     RESTRAINING DEFENDANTS SERVES THE PUBLIC INTEREST.

"[T]he dual purposes of infringement law [are to ensure] that owners of trademarks can benefit from the goodwill associated with their marks and that consumers can distinguish among competing producers."  *Thane Int'l v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002).  As discussed above, Defendants' use of trade dresses that infringe on The Book of Bronzers and Cat Eyes dresses has caused and will continue to cause significant confusion.  It is undoubtedly in the public interest to protect consumers from that confusion, and to protect businesses such as Too Faced from competitors who exploit well-established marks.  *See Vertos Med.*, 2009 WL 3740709, at *12 ("In the trademark context, courts often define the public interest as the right of the public not to be deceived or confused.").  Moreover, because Too Faced has demonstrated a likelihood of success on its federal trade dress infringement claim, the public interest weighs in favor of entering the preliminary injunction.  *See id.* at *33 ("In light of the court's finding that [the plaintiff] has established a likelihood of success as to the trademark infringement claim, the court finds that the public interest weighs in favor of" injunctive relief).

## V.   **CONCLUSION**

For the foregoing reasons, Too Faced respectfully submits that justice and equity require that its motion for preliminary injunction be granted in its entirety.

DATED: January 8, 2016                    GREENBERG TRAURIG, LLP


By */s/ Shaun A. Hoting*
J. Rick Taché (CA Bar No. 195100)
Susan S. Heller (CA Bar No. 160539)
Shaun A. Hoting (CA Bar No. 260656)
Erikson C. Squier (CA Bar No. 275274)

Attorneys for Plaintiff,
Too Faced Cosmetics, LLC

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES